The Citizens' State Bank v. Abbott.

---

THE CITIZENS' STATE BANK V. ABBOTT.

**Chattel Mortgage :** ADVERSE INTEREST IN CHATTELS UNDER CONTRACT: RIGHT OF POSSESSION. Defendant entered into a contract with G. by which he was to buy cattle and ship them to G., and G. was to sell them and return to defendant the purchase money, with one-half the net profits. G.'s interest in the profits was spoken of as a "commission" to be paid him by defendant, but it was further understood that defendant might draw upon G. for the cost of the cattle whenever he needed the money. In the transaction of the business, defendant drew upon G. for the cost of the cattle upon each shipment, and the drafts were paid by the plaintiff bank, which took a mortgage from G. upon the cattle for security. *Held* that this amounted to a payment by G. for the cattle, and that he became the owner thereof, subject only to defendant's right to his share of the profits when they were sold, and that, whatever right defendant might have to enforce that right, he was not entitled to the possession of the cattle as against plaintiff's mortgage; which is the only question involved in this case.

*Appeal from Pottawattamie District Court.*—HON. C. F. LOOFBOUROW, Judge.

FILED, MAY 24, 1890.

THE plaintiff is a corporation doing a banking business at Council Bluffs, Iowa. In 1887, the defendant was engaged in buying and shipping cattle to one A. Greenameyer, at Council Bluffs. As the shipments of cattle were made, defendant would draw on Greenameyer through the bank at Iowa City, and the drafts would be paid by the plaintiff bank. These drafts were drawn on the day a shipment was made, or a day or two thereafter. All the drafts drawn by defendant on Greenameyer were paid. Of the cattle shipped from time to time, many were sold, but others remained on hand. September 24, 1887, Greenameyer being indebted to the plaintiff in the sum of ten thousand, five hundred dollars, because of the payments of said drafts, made to plaintiff a mortgage on a large number of cattle to secure the same ; and on the nineteenth of October, 1887, Greenameyer made to the plaintiff another mortgage, to secure the same debt, on four hundred head of cattle. The cattle last mortgaged we understand to be the ones in controversy in this suit. Defendant Abbott having taken possession of the cattle, this suit is to recover their possession by virtue of the chattel mortgage. Defendant Abbott answers that he is the owner of the cattle, and entitled to the possession. The reply recites the facts as to the manner of doing the business, during the various shipments ; that the drafts drawn by the defendant had been paid by the plaintiff, and that mortgages had been made by Greenameyer from time to time as security therefor on the cattle so shipped, and that the defendant knew of such mortgages being given, and that he knew that Greenameyer assumed to own such cattle, and that the defendant allowed him to mortgage the same ; and the reply avers that, by reason of the premises, the defendant is estopped to claim the cattle from plaintiff. There was a verdict and judgment for defendant, from which the plaintiff appeals.

*Flickinger Bros.* and *Stone & Sims,* for appellant.

*R. S. Hall, G. A. Holmes* and *Burke & Hewitt,* for appellee.

GRANGER, J.—We think, under the testimony of the defendant and the undisputed facts, there should have been a judgment for the plaintiff. For the correctness of this view, let us look to the record. As to the manner in which the cattle were shipped and paid for, there is no dispute, and the facts were fully known to the defendant Greenameyer and plaintiff. It is not to be understood in this statement that defendant knew that the cattle were mortgaged to the plaintiff, but he shipped the cattle to Greenameyer, and drew upon him, and received the cost of the cattle to him before the cattle were sold by Greenameyer. Greenameyer paid the costs of the transportation and keeping. We may better understand the legal *status* of defendant and Greenameyer, if we take a single shipment of cattle. They are purchased by defendant, sent to Greenameyer, who refunds the purchase money, and pays all charges, and has the cattle in his possession. Now, take defendant's statement as to the contract: "I made an arrangement with Greenameyer about June, 1887, to buy cattle there and send them here, and that he would sell them on commission, and send the money as fast as he could sell the cattle. I was to draw for the cost of the cattle any time when I needed it." Again, he says: "I was to pay Greenameyer a commission equal to half the profits." Now, let it be conceded that Greenameyer pays the defendant's draft for the cost of the cattle, including charges, and the cattle are unsold. Who owns the cattle? Under the contract, it only remains to sell them, and divide the profits. If Abbott owns them, he must be Greenameyer's debtor for the money. Such an understanding is not deducible from any language used. He drew for the cattle. The money was paid for the cattle. He says: "I drew on him for the cattle every time I

shipped, within a few days." He says all the drafts were paid. Continuing the thought as to the single shipment, if they are sold without profit, who owns the money? Greenameyer, of course. It would not be questioned. If sold at a profit, what would be Abbott's interest in the money? One-half the profits. It must be, then, that one-half the profits represents Abbott's interest in the cattle after the drafts therefor were paid.

Confusion arises in this case by a play upon the word "commission." Abbott says he was to pay Greenameyer a commission equal to one-half the profits. That was upon his agreement to "send the money as fast as he would sell the cattle." But, according to Abbott's statement, there was a departure from this, and he drew for the cattle before sale, and received the pay from Greenameyer with knowledge that the cattle were unsold. With the delivery of the cattle, and a request for and receipt of payment to the extent of a purchase price, the law would operate to transfer the title or interest represented by such payment. It is, in effect, a sale of that interest. We think, under the conceded facts of the case, that Greenameyer, after the payment of the draft, was the owner of the cattle, subject, however, to the right of Abbott to have them sold, and the profits divided.

It remains to be determined if Abbott's interest would prevent Greenameyer from pledging them as security to the bank for the money to make the payments on the drafts. It is to be kept in mind that the gist of this proceeding is the right to the possession of the cattle. In that respect, what would have been Abbott's right as against Greenameyer? Certainly not a right to possession. Conceding that he might claim a lien to the extent of securing his share of the profits, and that in a proper proceeding he might enforce it, he could not claim the right of possession; for he is not the owner, as we have held, and, looking to his answer, he claims the possession only as the "absolute and unqualified owner." It is, then, a case in which the cattle are

delivered to Greenameyer, and the draft of the defendant for the payment is, at the request of Greenameyer, paid by plaintiff, and security taken upon the property thus paid for. The money thus paid has gone to the use of both Abbott and Greenameyer ; and, the title and possession being in Greenameyer, he might legally pledge it for the purchase money.

We do not determine whether or not Abbott, under the facts, has any claim on the cattle or against the plaintiff for his interest, as the question is not before us. What we hold is, that, under the statements of defendant and uncontradicted facts, the plaintiff is entitled to the possession of the cattle as against defendant. Defendant has taken a judgment against the plaintiff for ten thousand, five hundred dollars, being the full value of the cattle. To that, he is clearly not entitled.

The third instruction, asked by plaintiff, and refused, is in substantial accord with our view as expressed ; and, had it been given, the result must have been a verdict and judgment for plaintiff. This view seems to be so decisive of the case that a consideration of other questions seems unnecessary. The judgment of the district court is       REVERSED.